IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| CARL ODELL VARNER, JR., | ) | Civil Action No. 7:20-cv-00017 |
|    Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| DR. WANG, | ) | By: Michael F. Urbanski |
|    Defendant. | ) | Chief United States District Judge |

## MEMORANDUM OPINION

Carl Odell Varner, Jr., proceeding pro se, was a Virginia inmate at the time he filed this lawsuit, but has since been released from custody.  In his amended complaint, Varner alleges that Dr. Wang violated his Eighth Amendment rights when he failed to treat Varner's gallstones, instead exhibiting deliberate indifference to Varner's serious medical needs.  Specifically, Varner alleges that he had an ultrasound done in November 2018, approximately four months before his arrival at Green Rock Correctional Center, which showed that he had gallstones.[1]  At some unspecified point after his arrival at Green Rock, Varner had an appointment with Dr. Wang, shared with him the ultrasound results, and asked to be sent to a hospital to have the gallstones removed.  Varner claims that Dr. Wang repeatedly denied his request and refused to provide him treatment.  Am. Compl., ECF No. 24.  He further alleges that in February 2020, after his transfer to Greensville Correctional Center, he was informed that his "gallbladder is damaged and must be removed because the gallstones were not treated in a timely manner."  Id. at 2.

---

[1] According to the undisputed testimony, Varner was housed at Green Rock from March 27, 2019 until December 4, 2019, when he was transferred to Greensville Correctional Center.  Massenburg Decl. ¶ 3, ECF No. 26-1.  Dr. Wang did not treat Varner before his arrival at Green Rock, nor was Dr. Wang responsible for the medical treatment of Varner or any other inmates at Greensville during or after December 2019.  Wang Decl. ¶¶ 1, 4–5, ECF No. 26-2.

Pending before the court is Dr. Wang's motion for summary judgment. ECF No. 25. In it, Dr. Wang contends that Varner's claims must be dismissed because he failed to exhaust his administrative remedies before filing this lawsuit. Despite being given multiple extensions of time to respond and being informed of the importance of responding, all that Varner has submitted in response is a few documents, purportedly as evidence of his attempts at exhaustion, ECF No. 29, which the court will treat as his opposition to the summary judgment motion. See also ECF No. 38 (advising the parties of the same). As discussed in more detail in this opinion, Varner has failed to present any competent summary judgment evidence creating a dispute of fact as to whether he fully exhausted, despite being given multiple opportunities to do so. Thus, the court concludes that Dr. Wang's motion for summary judgment must be granted.

## I. SUMMARY JUDGMENT STANDARD

Under Rule 56, summary judgment is proper where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine issue of material fact exists only where the record, taken as a whole, could lead a reasonable jury to return a verdict in favor of the nonmoving party. Ricci v. DeStefano, 557 U.S. 557, 586 (2009).[2] In making that determination, the court must take "the evidence and all reasonable inferences drawn therefrom in the light most favorable to the nonmoving party." Henry v. Purnell, 652 F.3d 524, 531 (4th Cir. 2011) (en banc).

A party opposing summary judgment "may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial."

---

[2] Internal citations, alterations, and quotation marks are omitted throughout this opinion, unless otherwise noted. See United States v. Marshall, 872 F.3d 213, 217 n.6 (4th Cir. 2017).

Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Moreover, "[t]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." Id. at 247–48. Instead, the non-moving party must produce "significantly probative" evidence from which a reasonable jury could return a verdict in his favor. Abcor Corp. v. AM Int'l, Inc., 916 F.2d 924, 930 (4th Cir. 1990).

II.  DISCUSSION

**A.  The PLRA's Exhaustion Requirement**

As noted, Dr. Wang asks for summary judgment on the grounds that Varner failed to exhaust his administrative remedies. The Prison Litigation Reform Act provides that "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The exhaustion requirement "allow[s] a prison to address complaints about the program it administers before being subjected to suit, reduc[es] litigation to the extent complaints are satisfactorily resolved, and improve[s] litigation that does occur by leading to the preparation of a useful record." Jones v. Bock, 549 U.S. 199, 219 (2007). "[E]xhaustion is mandatory under the PLRA and . . . unexhausted claims cannot be brought in court." Id. at 211.

The PLRA requires "proper exhaustion" of available remedies prior to filing suit. Woodford v. Ngo, 548 U.S. 81, 90 (2006). "[P]roper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceeding." Id. at 90–91. Thus, an inmate's failure to follow the required procedures of the prison's administrative remedy process, including time limits, or to exhaust all levels of administrative review is not

3

"proper exhaustion" and will bar the claim. Id. at 90. Notably, moreover, district courts may not "excuse a failure to exhaust." Ross v. Blake, 136 S. Ct. 1850, 1856 (2016).

A prison official has the burden to prove an inmate's failure to exhaust available administrative remedies. Jones, 549 U.S. at 216. Once a defendant presents evidence of a failure to exhaust, the burden of proof shifts to the inmate to show, by a preponderance of the evidence, either that exhaustion occurred or that administrative remedies were unavailable through no fault of the inmate. See, e.g., Tuckel v. Grover, 660 F.3d 1249, 1254 (10th Cir. 2011); Graham v. Gentry, 413 F. App'x 660, 663 (4th Cir. 2011) (unpublished). Here, as discussed next, Dr. Wang has presented evidence of a failure to exhaust and so the burden lies with Varner to show that exhaustion occurred. He has not met that burden, nor has he created a dispute of fact sufficient to defeat summary judgment.

**B. Grievance Procedure at the Virginia Department of Corrections ("VDOC")**[3]

VDOC Operating Procedure ("OP") 866.1, Offender Grievance Procedure, is the mechanism used to resolve inmate complaints, and it applies to most aspects of prison life. OP 866.1 requires that, before submitting a formal grievance (also known as a "regular grievance"), the inmate must demonstrate that he has made a good faith effort to resolve the issue informally through the procedures available at the institution to secure institutional services or resolve complaints. Generally, this may be accomplished by submitting an informal complaint to the grievance department, which is then forwarded to the appropriate staff for investigation and response. The response should be given within 15 calendar days. S. Massenburg Decl. ¶¶ 4, 6 & Ex. A, OP 866.1, ECF No. 26-1.

---

[3] The court only discusses those aspects of the grievance policy relevant to Varner's exhaustion attempts.

If the informal resolution effort fails, the inmate must initiate a regular grievance by filling out the appropriate form. Regular grievances generally must be submitted within 30 days from the date of the incident and must include any required documentation of the prisoner's attempt to informally resolve the issue. Id. ¶ 6; OP 866.1 § V(A)(3).

There are three potential levels of review for an accepted regular grievance.[4] The Warden or Superintendent of the prison in which the inmate is confined is responsible for Level I review, and a response must be issued within 30 days. A dissatisfied inmate may appeal to Level II, which is conducted by the Regional Administrator, the Health Services Director, the Chief of Operations for Classification and Records, or the Superintendent of Education, depending on the issue. Level II responses must be made within 20 days. For most issues, Level II is the final level of review. The Level II response informs the offender whether he may pursue an appeal to Level III, which is the final level of review. For those issues appealable to Level III, the Chief of Corrections Operations or Director of VDOC conducts a review of the grievance, and the response must be made within 20 days. Massenburg Decl. ¶ 8.

## C. Defendant's Evidence That Varner Failed to Fully Exhaust

Dr. Wang has presented evidence that Varner failed to exhaust his claim against Dr. Wang. Massenburg Decl. ¶ 10. Specifically, Massenburg notes that Varner filed an informal complaint on September 17, 2019, complaining of gallstones (GROC-19-INF-01121). In it, he claimed that he saw Dr. Wang for a chronic care visit on September 13, 2019, showed Dr. Wang his ultrasound

---

[4] Prior to reviewing the substantive claims of the grievance, prison officials conduct an "intake" review to ensure that it meets the published criteria for acceptance. In addition to including the informal complaint or receipt, the grievance must raise a grievable issue and may contain only one issue. Massenburg Decl. ¶ 7; OP 866.1 §§ IV(M), VI(A)(2). If the grievance does not meet the criteria for acceptance, prison officials complete the "intake" section of the grievance and return it to the inmate with instructions on how to remedy any problems with it. The inmate may seek review of the intake decision by sending the grievance form to the regional ombudsman. There is no further review of the intake decision. Massenburg Decl. ¶ 7.

results from November 2018, and asked to be sent to a hospital for the stones to be removed, but that Dr. Wang refused. On October 1, 2019, a Green Rock registered nurse responded, indicating that Varner's medical record revealed no recent complaints consistent with gallstones. The response also advised Varner that he could submit a request form to schedule a medical appointment. ECF No. 26-1 at 23–24.

On October 9, 2019, the Green Rock Grievance Office received Regular Grievance GROC-19-REG-00131 from Varner, which raised essentially the same complaint as his informal complaint. ECF No. 26-1 at 22, 25. That grievance was accepted for Level I review. On October 23, 2019, the Warden issued a response, deeming the grievance unfounded. Id. at 21. The response explained that upon investigation, Nurse Cobbs met with Varner on October 17, 2019, to address the issue and resolve it. The response states that, during that meeting, Varner was again instructed to submit a request to be seen if he developed symptoms consistent with gallstones. It further stated that Varner was "being seen and treated by Medical Staff appropriately and within policy guidelines." Id.

According to Massenburg, Varner had five calendar days to appeal the Level I determination, but he did not do so. Massenburg states that if Varner had appealed, it would have been noted on the Level I response and the Level II response from the Health Services Director would have been sent to the Green Rock Grievance office. Instead, there is nothing written on the Level I response—either from Varner or anyone else—indicating that an appeal was taken, and the Green Rock records contain no receipt of a Level II appeal or response.

**D. Varner's Summary Judgment Evidence as to Exhaustion Does Not Create a Genuine Dispute of Fact**

Varner claims that he fully exhausted his grievance. In his unverified amended complaint (the operative complaint), Varner states that he mailed his Level II appeal on October 25, 2019, but never received it back. In some cases—and despite the lack of a document in a grievance department's record—a plaintiff could create a dispute of fact precluding summary judgment by presenting evidence as to his specific attempts at exhaustion. But here, Varner has failed to put forth any competent evidence to preclude summary judgment.

First of all, the court recognizes that it can treat statements made in a verified complaint, if based on personal knowledge, as evidence in opposition to the summary judgment motion. Williams v. Griffin, 952 F.2d 820, 823 (4th Cir. 1991). But the operative complaint here—the amended complaint—is not sworn or verified. See generally ECF No. 24. Thus, it is not entitled to the benefit of the rule in Williams, and the statements in it cannot be considered as evidence in opposition to summary judgment. Workman v. Bodiford, No. 6:18-CV-00355-RBH, 2018 WL 6829015, at *2 n.5 (D.S.C. Dec. 28, 2018) (concluding that plaintiff's unverified complaint was not an opposing affidavit for summary judgment purposes), aff'd, 766 F. App'x 1 (4th Cir. 2019); Askins v. Belissary, No. 4:12-CV-1856-RBH, 2014 WL 507279, at *7 (D.S.C. Feb. 6, 2014) ("The law is clear that a plaintiff cannot rely on an unverified complaint in opposing a motion for summary judgment.") (citation omitted), aff'd, 564 F. App'x 46 (4th Cir. 2014); see also United States v. White, 366 F.3d 291, 300 (4th Cir. 2004) (holding that "unsworn argument does not constitute evidence" for purposes of summary judgment).

Varner's original complaint, although verified, does not provide any specific information about his attempts to exhaust and so does not create a dispute of fact, either. It simply contains

a general statement (in the form of a checkmark on the form) stating that he exhausted administrative grievances. ECF No. 1 at 1. Moreover, the original complaint also references a number of different claims and is not limited—as his amended complaint is—to his claim about his gallstones. See generally id. Thus, its general statement that he exhausted does not create a dispute of fact as to whether Varner fully exhausted this particular claim.

The only other evidence Varner has submitted consists of several documents that he filed in response to the summary judgment motion. ECF No. 29. Notably, they are not accompanied by an affidavit explaining what they are or how they show that he exhausted. The court will describe each document briefly.

The first document is a letter addressed to Varner from the Manager of the Ombudsman Services Unit dated December 16, 2019. That document states that it is a response to a Level III grievance that Varner filed, references #GROC-19-REG-00100, and states that the grievance does not meet the criteria for a Level III response. It then states that it is returning his correspondence "and a copy of the sign [sic] Offender Grievance Response–Level II for your record." ECF No. 29 at 1.

To the extent that Varner is attempting to use this document to show that he in fact filed a Level II appeal and received a response regarding Dr. Wang's treatment of his gallstones, the document does not support his claim. Notably, the referenced claim, #GROC-19-REG-00100, is not the same as the grievance number used for his regular grievance on this issue, which is #GROC-19-REG-00131, not -00100. Thus, this document does not support any assertion that he filed a Level II appeal of his grievance complaining about the lack of gallstone treatment.

Second, Varner includes a copy of the response to his regular grievance, with a handwritten note at the bottom that he mailed the grievance to the health services director "on

8

date in notes." ECF No. 29 at 2. He then attaches a calendar of October 2019 with hand-written notes on various dates.[5] Id. at 3. On October 23, the calendar states, "Gaul Stones [sic]" and on October 24, it states "Mailed out Level 2 apeal [sic]." Id. There are arrows next to both of these notations pointing to the right, but it is not clear whether these arrows are intended to move these notations one day later or have some other significance. Like the first document he submitted, moreover, neither the second document nor the calendar was submitted with an affidavit or even with any statement explaining the notes. Particularly in the absence of any testimony explaining the purported significance of these documents, neither this note nor the calendar is sufficient to create a dispute of fact as to whether he exhausted the particular grievance by appealing to Level II.

Third, Varner provides a document from October 24, 2019, in which he requested to withdraw funds to mail a letter. The request contains a notation from the mail room, stating that the letter was sent "as bulk mail" and so there was no charge. There is writing (presumably Varner's) on the bottom of the request stating: "this letter went to Richmond for appeal for gaul stones [sic] and a letter also about my concerns about my injured hand." ECF No. 29 at 4. Again, this is not sworn testimony. Thus, it is insufficient for purposes of opposing a summary judgment motion. And nothing on the form itself shows that the document he sought to mail in fact related to Varner's complaint about his gallstones.

Fourth, Varner provides copies of two different requests he submitted in April 2020, in which he requests a copy of his Level II grievance for his gallstones. Id. at 5–6. Presumably, he

---

[5] At the bottom of the calendar, it states "my dates in notes," although nowhere does it state whether those notes were contemporaneously written. Also, the notes refer to other incidents, as well, and appear to refer to his exhaustion of remedies as to those other events or incidents in addition to his claim here. ECF No. 29 at 3. In short, the calendar does not unambiguously indicate that he filed his Level II appeal regarding his gallstones—on a particular day or otherwise.

offers this as proof that he has attempted to obtain documentation showing he submitted a grievance. But the fact that he requested documents after the fact (and after the summary judgment motion was filed) is not proof that he in fact appealed the Level I grievance regarding his gallstones to Level II.

In summary, the documents submitted in opposition are unsworn and lack an explanation or even a signature. And even though the documents contain notes (presumably from Varner) stating that he mailed his Level II appeal on some date in October, the documents themselves do not present any such evidence. Thus, while documents need not be in a form that is admissible to be considered as summary judgment evidence, Rule 56(c)(2),[6] they nonetheless must constitute "significantly probative" evidence from which a reasonable jury could conclude he exhausted, in order to preclude summary judgment. See Abcor Corp., 916 F.2d at 930. The documents that he has submitted are not significantly probative on that issue, for all of the reasons already discussed.

In short, the court is left with no disputes of fact, but only the testimony of Massenburg, which shows that Varner did not exhaust. Because he has failed to exhaust his administrative remedies, the court cannot reach the merits of his underlying claim. Ross, 136 S. Ct. at 1856 (noting that district courts may not excuse a failure to exhaust).

---

[6] Unlike its predecessor, the current version of Rule 56 does not require that materials be authenticated or in an admissible form to be considered on summary judgment. See Fed. R. Civ. P. 56(c) (requiring that documents supporting or opposing summary judgment must be able to be put in a "form that would be admissible in evidence"); Orsi v. Kirkwood, 999 F.2d 86, 92 (4th Cir. 1993) (addressing the prior version or Rule 56 and stating that to be admissible at summary judgment, "documents must be authenticated by and attached to an affidavit that meets the requirements of Rule 56(e)").

## III. CONCLUSION

For the foregoing reasons, Dr. Wang's motion for summary judgment will be granted. An appropriate order will be entered.

It is so **ORDERED**.

Entered: December 17, 2020

Michael F. Urbanski
Chief U.S. District Judge
2020.12.17 15:40:37
-05'00'

Michael F. Urbanski
Chief United States District Judge